FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 24, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JESSICA FUQUA,

                Plaintiff,

      v.

ASSOCIATED CREDIT SERVICE,
INC., a Washington corporation, and
PAUL J WASSON and JANE DOE
WASSON,

                Defendants.

No.   2:17-CV-00324-SMJ

ORDER RULING ON
DEFENDANT'S MOTION TO
DISMISS FOR FAILURE TO STATE
A CLAIM OR ALTERNATIVELY
MOTION FOR SUMMARY
JUDGMENT

Before the Court, without oral argument, is Defendants' Motion and Memorandum to Dismiss for Failure to State a Claim, or, Alternatively Motion for Summary Judgment, ECF No. 24. Fuqua's First Amended Complaint, ECF No. 3, alleges that Defendants Paul J. Wasson, Jane Doe Wasson, and Associated Credit Services ("Associated") (collectively, "Defendants") committed "unfair and deceptive" acts in violation of state and federal consumer protection laws in connection with its Associated's attempts to collect on debt owed by Fuqua.[1]

_____

[1] Fuqua's amended complaint contains a third claim, which alleges that Defendants sent Fuqua improper notice of her exemption rights because the initial notice incorrectly stated only $200 was exempt when Washington law permits debtors to exempt up to $500. Defendants addressed this claim in their briefing, but Fuqua

ORDER - 1

1    Fuqua first alleges that Defendants executed an application for a writ of

2  garnishment that falsely stated Associated had "reason to believe" Fuqua's account

3  contained nonexempt funds. Fuqua also asserts that Associated unlawfully

4  attempted to collect a $5 notary fee its application for reimbursement of court costs

5  in connection with its motion for default judgment in the Spokane County District

6  Court. Fuqua alleges that Associated's actions under both claims violated the Fair

7  Debt Collection Practices Act (FDCPA), 18 U.S.C. § 1692 *et seq.*, and the

8  Washington Consumer Protection Act (CPA), Wash. Rev. Code (RCW) § 19.86 *et*

9  *seq.*

10    Defendants move for an order dismissing the claims or, alternatively, for

11  summary judgment on both claims. Because Defendants submitted evidence beyond

12  that contained in the pleadings, the Court considers the motion as one for summary

13  judgment. Under this standard, taking all facts and inferences in the light most

14  favorable to Fuqua's claims, Fuqua cannot establish facts sufficient to support her

15  claims for violation of the FDCPA. Accordingly, the Court grants Defendants'

16  motion for summary judgment on Fuqua's FDCPA claims. The Court also declines

17  to exercise continued supplemental jurisdiction over Fuqua's remaining state law

18  claims.

19

20  has since abandoned the claim. Accordingly, Fuqua's exemption rights notice claim
   is dismissed.

ORDER - 2

## LEGAL STANDARD

In support of their motion, Defendants have asked the Court to consider documents and declarations not attached to Fuqua's complaint. In deciding a Rule 12(b)(6) motion, the court generally looks only to the face of the complaint and the documents attached thereto. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 97, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). A court must normally convert a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment if it "considers evidence outside the pleadings." *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003); *see also* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). The Court therefore considers Defendants' motion as a motion for summary judgment.

When a court converts a motion to dismiss to a motion for summary judgment, it must give "[a]ll parties . . . a reasonable opportunity to present all the material that is pertinent to the motion." Fed R. Civ. P. 12(d). In the Ninth Circuit generally the "non-moving party must be allowed to conduct discovery to oppose [the] motion." *Inlandboatmens Union of Pacific v. Dutra Group*, 279 F.3d 1075, 1083 (9th Cir. 2002). Here, however, it appears from the face of the complaint and Fuqua's responsive memoranda that all information to oppose the motion is within Fuqua's

knowledge. Despite the fact that Defendants styled their motion as a Motion and Memorandum to Dismiss for Failure to State a Claim, or, Alternatively Motion for Summary Judgment, Fuqua did not object to the motion or request more time to conduct discovery under Fed. R. Civ. P. 56(d). Instead, Fuqua responded to the motion on the merits, included an opposing statement of facts, and included her own declaration in support of her opposition to Defendants' motion. Accordingly, the Court will consider the matter on the materials submitted.

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal citation omitted).

ORDER **-** 4

# BACKGROUND

Associated Credit Services is a Washington debt collection company in Spokane Valley Washington. Associated is owned and operated by brothers David and Jon Solberg. Attorney Paul Wasson represents Associated in various debt collection matters.

On April 20, 2015, Associated filed a debt collection action in the Spokane County District Court. ECF No. 26 at 4. Associated hired Alpine Legal Process, Inc., ("Alpine") to effect service. *Id.* Alpine is a legal service process company owned by Chad Solberg. The owners of Associated, Jon and David Solberg, are Chad Solberg's uncle and father, respectively, but neither has an ownership interest in Alpine. *Id.* at 6. Alpine charges Associated a flat rate of $45 per hour for process service. ECF No. 26 at 5. Alpine effected service on Fuqua and billed Associated $45. *Id.*

While Washington law does not require a service of process declaration to be notarized, Associated prefers process servers to use a notarized declaration of service. Associated's attorney, Paul Wasson, works in the same building as Associated. ECF No. 28 at 2. His secretary, Cynthia Henderson, is a notary. *Id.* Wasson has a practice of allowing Associated to send process servers to Henderson for affidavit notarizations. *Id.* Henderson does not charge a fee for these notary

ORDER **-** 5

services. *Id.* In Fuqua's case, Henderson notarized the declaration of service, which was signed by Alpine process server Jason Wilson. ECF No. 26 at 6.

When Fuqua failed to defend against the suit, Associated filed a motion for default and default judgment in Spokane County District Court, which the court granted on July 16, 2015. ECF No. 26 at 7. The motion contained a request for reimbursement of the $45 process service cost. *Id.* In its affidavit supporting its motion for order of default judgment, Associated indicated that the service fee consisted on $30 for service, $10 for return, and $5 for "Notary." *Id.* at 5. This was false. David Solberg believed that the Spokane County District Court would not approve the $45 process service flat fee, so he falsely allocated portions of the flat fee to service, return, and notary. *Id.* In fact, the $45 requested represents the $45 flat fee charged by Alpine. *Id.* at 5–6.

After obtaining the judgment, Associated sought to collect on the outstanding debt by garnishing funds in Fuqua's bank accounts. Before applying for a writ of garnishment, Associated conducted a credit inquiry on Fuqua. *Id.* at 7–8. The inquiry showed that Fuqua had several open accounts, including three accounts with Spokane Teacher's Credit Union. *Id.* at 12–14. Because Fuqua had a checking account, a credit card, and a loan through Spokane Teacher's Credit Union, Associated concluded Fuqua was likely employed and that the bank account would likely contain nonexempt funds. *Id.* at 8. In reality, Fuqua was not employed at that

ORDER - 6

time. ECF No. 34 at 3. In fact, she had been receiving government assistance for nearly the entire year of 2016. ECF No. 34 at 3.

Acting as Associated's attorney, Wasson executed a writ of garnishment for funds held in Fuqua's account at Spokane Teacher's Credit Union on September 13, 2016. ECF No. 29 at 3. Associated served Fuqua's bank with the writ of garnishment on October 5, 2016. Following service of the writ, Spokane Teachers Credit Union froze the funds in Fuqua's account. The balance in Fuqua's account was $165.12. ECF No. 34 at 3. The money in Fuqua's bank account consisted of funds received from government assistance and possibly a small sum given to her by her parents. *Id.*

Fuqua called Associated and stated that she had approximately $160 frozen on her account. *Id.* at 4. She asked how she could get that money back, and an Associated representative told her to fill out the garnishment exemption paperwork if it applied to her. ECF No. 26 at 8. Associated's file shows that Fuqua was sent a copy of the garnishment, including the Notice of garnishment and Exemption Claim forms by certified mail, but the mail was returned to Associated on October 26, 2016 marked as "Return to sender, Unclaimed, Unable to forward."

ORDER **-** 7

**DISCUSSION**

**A.    Defendants are entitled to summary judgment on Fuqua's garnishment claim because Fuqua cannot show that Defendants lacked reason to believe her account contained garnishable funds.**

Fuqua alleges that Associated violated the FDCPA by falsely asserting it had reason to believe Fuqua's bank account contained nonexempt funds in its application for writ of garnishment. It is not entirely clear from Fuqua's complaint or her response to Defendant's motion for summary judgment which sections of the FDCPA Fuqua believes Defendants violated. However, an extended analysis under the FDCPA is unnecessary because the undisputed facts do not support the Fuqua's assertion that Defendants sought a writ of garnishment without a reasonable belief that the account contained garnishable funds.

Under Washington law, judgment creditors who have judgments that are wholly or partially unsatisfied are entitled to seek writs of garnishment under Wash. Rev. Code § 6.27. A judgment creditor applying for a writ of garnishment must include an affidavit stating, among other things, that the judgment creditor has reason to believe the account contains nonexempt funds. The clerk of the court then issues a writ of garnishment to the judgment creditor for service upon the garnishee. Upon issuance of the writ, a debtor may claim exemptions from garnishment pursuant to certain state statutes. One such exemption permits debtors to exempt from garnishment up to $500 in cash or in a bank account.

ORDER - 8

RCW § 6.15.010. To claim this exemption, a debtor must submit to the clerk of court a statutory form set out in § 6.27.160 within 28 days of the date of the writ of garnishment.

Fuqua's claim turns primarily on whether Defendants had "reason to believe" her bank account with Spokane Teacher's Credit Union contained nonexempt funds. The court in *Hargreaves v. Assoc. Credit Serv. Inc*., No. 2:16-cv-0103-TOR, 2017 WL 4767146 (E.D. Wash. Oct. 20, 2017), addressed a similar dispute involving nearly identical facts. The court reasoned that the statutory standard must be interpreted in light of the fact that, due to privacy laws, judgment creditors generally have limited access to judgment debtors' accounts before issuing the writ. *Id.* at 3. The court further reasoned that the first $500 in every bank account is not exempt from garnishment as a matter of law, but rather "*may* be claimed to be exempt by the debtor." *Id.* Accordingly, the court described the statutory reason to believe requirement as "negligible," and held that "it is sufficient for [judgment creditors] to find that a debtor is employed and has a bank account, or has a bank account and does not know or have reason to believe that the debtor's account is only comprised of Social Security benefits or some other totally exempt source." *Id.*

The *Hargreaves* court's interpretation is consistent with the statute's plain language. The statute requires only "reason to believe." A "reason" is a ground or

cause that explains or accounts for something. Black's Law Dictionary (10th ed. 2014). Thus, the statute requires only that the judgment creditor have some grounds to support its belief that the account holds nonexempt funds. It does not require that the judgment creditor's reason be a good one. Nor does it require that the belief be reasonable. It requires only that the creditor's belief must not be baseless.

Here, Associated has established that it had reason to believe Fuqua's checking account contained nonexempt funds. Before seeking the writ of garnishment, Associated ran a credit inquiry on Fuqua. The inquiry showed that Fuqua had a checking account, a credit card, and a loan with Spokane Teacher's Credit Union. Associated asserts that, because Fuqua had multiple lines of credit from the same institution, it inferred that Fuqua was likely employed. Associated did not have any notice that Fuqua had applied to exempt the funds in the account or that the account contained exclusively exempt funds. Associated therefore had reason to believe the account contained nonexempt funds.

**B.      Fuqua cannot show that Defendants' representations to the Spokane County District Court constituted a violation of the FDCPA.**

Fuqua next argues that Associated violated 15 U.S.C. §§ 1692e and 1692f— which prohibit the use of false or misleading statements when collecting a debt— by attempting to recover an unnecessary notary fee. Washington law allows a judgment creditor to recover from the judgment debtor taxable court costs and fees. RCW § 4.84.010. This includes "the amount actually charged [by a registered

process server] and incurred in effecting service." *Id.* It does not, however, include fees for services not required by the court. Washington courts do not require a declaration of service to be notarized, and a notary fee therefore is not a taxable court cost. Here, Associated sought to recover from Fuqua the $45 cost for service of process. In its affidavit supporting its motion for order of default judgment, Associated indicated that the service fee consisted on $30 for service, $10 for return, and $5 for "Notary." Associated admits, however, that this allocation of costs was false and that the $45 service fee reflected a flat fee charged by Alpine, Associated's process service company. While Fuqua argues that Associated's misrepresentation constitutes a violation of the FDCPA, the violation is immaterial and therefore insufficient to support an FDCPA claim.

Fuqua argues that, by attempting to collect a $5 notary fee through its application for reimbursement, Associated violated RCW § 19.16.250(21), which prohibits debt collectors from attempting to collect nontaxable court costs, as well as §§ 1692e and 1692f of the FDCPA. A debt collection practice in violation of state law is not a per se violation of the FDCPA. *See Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098 (9th Cir. 1996). Instead, the court must analyze the substance of the allegedly improper communication to determine whether it constitutes an independent violation of the FDCPA. *Id.* The Court therefore analyzes whether

1  Associated's representations regarding the notary fee violated the FDCPA without

2  deciding whether the representations violated Washington law.

3      Under Ninth Circuit case law, a false or misleading statement is not

4  actionable under §§ 1692e or 1692f unless it is material. *Donohue v. Quick Collect,*

5  *Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010). The purpose of the FDCPA is "to provide

6  information that helps consumers to choose intelligently." *Id.* (quoting *Hahn v.*

7  *Triumph P'ships LLC,* 557 F.3d 755, 757–58 (7th Cir. 2009). Thus, if a statement

8  would not "frustrate a consumer's ability to intelligently choose his or her

9  response," it is not material and therefore is not misleading within the meaning of

10 the FDCPA. Because neither party disputes that Associated falsely attributed $5 of

11 the process service fee to "Notary," the Court focuses its inquiry on whether the

12 statement was material.

13     In *Donohue v. Quick Collect, Inc.*, the Ninth Circuit considered whether

14 misrepresentations contained in a complaint were material. In that case, Quick

15 Collect, a debt collector, brought an action against Debbie Donohue to recover debt

16 owed for pediatric dental services. 592 F.3d at 1029. The complaint stated that

17 Quick Collect sought a judgment for "the sum of $270.99, together with interest

18 thereon of 12% per annum . . . in the amount of $32.89." *Id.* Donohue brought a

19 class action against Quick Collect alleging that Quick Collect violated the FDCPA's

20 prohibition against the use of false or misleading statements by "misrepresenting

the amount of interest." *Id.* Although Quick Collect's complaint stated Donohue

owed an interest payment of $32.89, the $32.89 was actually comprised of two

components: $24.07 in pre-assignment finance charges and $8.20 in post-

assignment interest calculated at an annual rate of 12%. *Id.* at 1031. The district

court granted Quick Collect's motion for summary judgment, and Donohue

appealed. *Id.* at 1029.

On appeal, the Ninth Circuit concluded that, although Quick Collect's

complaint contained a false statement, the statement was not material and therefore

did not violate the FDCPA. *Id.* at 1033. The court explained that the complaint

"sought recovery of sums to which Quick Collect was clearly and lawfully entitled."

*Id.* It further explained that "the statement in the Complaint did not undermine

Donohue's ability to intelligently choose her action concerning her debt. . . . [W]e

can conceive of no action Donohue could have taken that was not already available

to her on the basis of the information in the Complaint." *Id.* at 1034. Accordingly,

the court affirmed the district court's grant of summary judgment to the debt

collector. *Id.*

In contrast, the district court in *Kirk v. Gobel*, 622 F. Supp. 2d 1039 (E.D.

Wash. 2009), held that a debt collector's claim to recover unregistered process

server fees was unfair and misleading in violation of the FDCPA. In that case, Terry

Gobel sought to collect debt owed by Ron Kirk for health care services. *Id.* at 1041.

ORDER - 13

Gobel filed a debt collection action, and Kirk failed to defend the action. *Id.* Gobel

obtained a default judgment including $70 for service fees. *Id.* Kirk filed a motion

to set aside the judgment entered against him. *Id.* The court granted the motion due

to the fact that Gobel had attempted to recover service of process fees incurred by

unregistered process servers, in violation of Washington state law. *Id.* at 1048. Kirk

then brought an action in federal district court for violation of § 1692e of the

FDCPA. The district court held that Gobel violated the FDCPA by attempting to

collect unregistered process server costs because Washington law does not permit

the collection of process service fees incurred by an unregistered process server. *Id.*

While at first glance *Kirk* may appear most analogous to the present matter,

this case more closely resembles *Donohue* for the purposes of the FDCPA analysis.

Washington law permits judgment creditors to recover the "the amount actually

charged [by a registered process server] and incurred in effecting service." RCW

§ 4.84.010. Although it mischaracterized the fee's component parts, Associated

sought to recover the $45 cost incurred in effecting service upon Fuqua. Thus, as in

*Donohue*, Associated sought recovery of funds to which it was "clearly and lawfully

entitled." 592 F.3d at 1033. Likewise, the misrepresentation does not appear to have

impacted Fuqua's ability to make an intelligent choice in her response to the default

judgment. Like *Donohue*, Fuqua has not identified any action she "could have taken

ORDER **-** 14

that was not already available to her on the basis of the information" in the default judgment. *Id.* at 1034.

Fuqua attempts to characterize Associated's misrepresentation as an effort to collect an illegal notary fee. ECF No. 32 at 15. If this were the case, Associated's actions would more closely resemble those in *Kirk*, where the judgment creditor attempted to seek reimbursement for fees to which he was under no circumstances entitled. However, Fuqua's characterization finds no support in the facts. Associated has produced the undisputed declarations of David Solberg, Chad Solberg, and Cynthia Henderson, which establish that Associated never incurred, nor attempted to seek reimbursement for, a notary fee. Even taken in the light most favorable to Fuqua's claim, the undisputed facts show that Associated presented the court with an accurate, though embellished, statement of the costs to which it was legally entitled. While the Court certainly does not condone Associated's misrepresentations to the judiciary, the misrepresentation was not misleading for the purposes of the FDCPA.

For the foregoing reasons, the Court finds that Associated's statement regarding the $5 "Notary" fee is not a material misrepresentation within the meaning of the FDCPA. Associated is therefore entitled to summary judgment on this claim.

**C.** **The Court declines to exercise continued supplemental jurisdiction over Fuqua's state law claims.**

A federal court has supplemental jurisdiction over pendent state law claims to the extent they are "so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1376. "A state law claim is part of the same case or controversy when it shares a 'common nucleus of operative fact' with the federal claims and the state and federal claims would normally be tried together." *See Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004). However, after acquiring supplemental jurisdiction of a state law claim, a court may decline to exercise jurisdiction if

> (1) The claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1376(c). Indeed, "[i[n the usual case in which all federal-law claims are eliminated before trial, the balance of the factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988), *superseded by statute on other grounds as stated in Stanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010).

Here, Fuqua brought claims under both the FDCPA and the WCPA. For the reasons outlined above, the Court has determined that Defendants are entitled to

ORDER - 16

summary judgment on Fuqua's FDCPA claims. Accordingly, Fuqua's only remaining claims are for violations of the Washington CPA predicated on violations of state law. No federal claims remain.

The values of judicial economy, convenience to the parties, fairness, and comity are best advanced by dismissing the remaining state law claims for resolution in the Washington State courts. First, state court is the most appropriate forum to address Fuqua's remaining state law claims under the Washington CPA. Moreover, the parties will not be greatly inconvenienced by the Court's decision to decline jurisdiction. This case is still in the summary judgment stage, and the Court has not yet held a pretrial conference or ruled on any pretrial motions. If Fuqua chooses to refile in state court, the parties' discovery, briefing, and pretrial motions can be easily transferred and utilized in that forum. Additionally, the period of limitations for Fuqua's state law claims is tolled for thirty days after the claims are dismissed unless Washington law provides for a longer tolling period. *See* 28 U.S.C. § 1367(d); *Artis v. Dist. of Columbia*, 138 S. Ct. 594, 603 (2018) (holding that the period of limitations for refiling in state court a state claim dismissed along with related federal claims by a federal district court exercising supplemental jurisdiction, "shall be tolled while the claim is pending [in federal court] and for a period of 30 days after it is dismissed unless state law provides for a longer tolling period). Finally, there is no independent basis to retain jurisdiction over the claims.

Plaintiff and defendant are both citizens of Washington, making the Washington state courts a suitable venue for resolution of the remaining claims.

Accordingly, **IT IS HEREBY ORDERED**:

1.  Defendants' Motion and Memorandum to Dismiss for Failure to State a Claim, or, Alternatively Motion for Summary Judgment, **ECF No. 24**, is **GRANTED** in part.

    *A.*  The Court enters summary judgment in favor of Defendants on Fuqua's FDCPA claims.

2.  Fuqua's remaining state law claims are **DISMISSED without prejudice**.

3.  All parties shall bear their own costs and attorneys' fees.

4.  All pending motions are **DENIED AS MOOT.**

5.  All hearings and other deadlines are **STRICKEN.**

6.  The Clerk's Office is directed to **ENTER JUDGMENT** in favor of Defendants and **CLOSE** this file.

**IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 24th day of May 2018.

_____
SALVADOR MENDOZA, JR.
United States District Judge

ORDER **-** 18